RONALD J. ANDERSON *v.* R & K SPERO
COMPANY ET AL.
(AC 28625)

Flynn, C. J., and Robinson and Pellegrino, Js.

Argued March 12—officially released May 13, 2008

*Ronald J. Anderson*, pro se, the appellant (plaintiff).

*Lawrence R. Pellett*, for the appellees (defendants).

*Opinion*

ROBINSON, J. The plaintiff, Ronald J. Anderson, appeals from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner) denying his claim for workers' compensation benefits. On appeal, the plaintiff claims that the board improperly sustained the commissioner's finding that his chiropractic treatments were not medically reasonable and necessary. We affirm the decision of the workers' compensation review board.

The following factual and procedural history is necessary for our discussion. On June 24, 1997, the plaintiff was employed by the defendant R & K Spero Company (Spero)[1] and sustained a work-related injury to his lumbar spine, cervical spine and right shoulder. The plaintiff sustained these injuries following a fall in Spero's restaurant. The defendants accepted responsibility for these injuries and paid specific benefits for impairments to the cervical spine, lumbar spine and right shoulder

---

[1] In addition to Spero, its workers' compensation insurer, Chub & Son, is also a defendant in this case.

of the plaintiff. The plaintiff achieved maximum medical improvement for his back and neck in 1998, and for his right shoulder in 1999.

In March, 2002, the plaintiff aggravated his previous back injury after picking up a container of milk in his home. The plaintiff began treatment with Thomas Arkins, a physician who prescribed physical therapy and pain medication. Arkins also referred the plaintiff to another physician, Martin Hasenfeld. Hasenfeld ordered a magnetic resonance imaging (MRI) procedure and facet joint injections. The MRI showed disc degeneration in the plaintiff's back. Hasenfeld prescribed pain medication and recommended a discogram.[2]

On April 1, 2003, Jacob Mushaweh, a physician, performed an examination of the plaintiff at the request of the defendants. Mushaweh opined that the plaintiff's back pain was not related to his compensable injury. He further opined that the plaintiff was not a good candidate for surgery and did not recommend a discogram. Following Mushaweh's examination and opinion, the defendants contested any further treatment.

In December, 2003, Robert N. Margolis, a physician, conducted a commissioner's examination of the plaintiff. Margolis diagnosed lumbar disc degeneration and determined that the plaintiff had achieved maximum medical improvement. Later that month, Margolis reviewed the plaintiff's lumbar spine MRI and indicated that his opinion regarding the plaintiff's physical condition had not changed.

In January, 2004, the plaintiff, on his own initiative, began treating with James Allen, a chiropractor.[3]

---

[2] A "diskogram" is defined as the "graphic record, usually radiographic, of diskography." T. Stedman, Medical Dictionary (28th Ed. 2006). A "discography" is defined as "[h]istorically, radiographic demonstration of intervertebral disk by injection of contrast media into the nucleus pulposus." Id.

[3] We have stated: "Once the claimant has selected a treating physician, the commissioner may authorize or direct a change of physician at the request of the employer or employee, or when good reason exists. . . . The

Between January, 2004, and March, 2005, he received 166 chiropractic treatments. In August, 2004, Margolis performed another commissioner's examination and indicated that the petitioner was capable of light duty work. He further indicated that in his opinion, the type of chiropractic treatments performed by Allen on the plaintiff were not "scientifically valid."

The amount due for Allen's chiropractic treatments totaled $9130. The plaintiff has paid $4600 toward that amount. The plaintiff sought authorization for his treatments with Allen, and the commissioner held a hearing on April 4, 2005. On June 9, 2005, the commissioner issued a decision denying authorization for payment to Allen. Specifically, the commissioner concluded that the plaintiff "had reached maximum medical improvement and the unauthorized chiropractic treatment by

employer is not responsible for paying for the cost of care by an unauthorized treater. . . . A claimant should obtain permission to change physicians before commencing a new course of treatment. This may include a valid referral from an authorized physician. . . . In order [for treatment] to be compensable, a claimant has the burden of proving that medical treatment was either provided by the initial authorized treating physician under [General Statutes] § 31-294d, or obtained pursuant to a valid referral from an authorized physician." (Citation omitted; internal quotation marks omitted.) *Sellers* v. *Sellers Garage, Inc.*, 80 Conn. App. 15, 22, 832 A.2d 679, cert. denied, 267 Conn. 904, 838 A.2d 210 (2003); see also General Statutes § 31-294d (c).

We note that in the present case, the commissioner never authorized or directed a change in physicians; therefore, the plaintiff failed to meet the requirement of the statute in regard to changing his treating physician to Allen. See, e.g., *Donaldson* v. *Continuum of Care, Inc.*, 94 Conn. App. 334, 339, 892 A.2d 332 (2006), cert. denied, 282 Conn. 921, 925 A.2d 1103 (2007). We further note, however, that the board previously has held that a commissioner has the authority to retroactively authorize a change of medical providers. *Atherton* v. *Rutledge*, No. 1339, CRB -7-91-11 (September 2, 1993); see also *Farkash* v. *Gerelco, Inc.*, No. 1566, CRB-8-92-11 (January 12, 1994); *Davis* v. *Board of Education*, No. 1346, CRB-2-91-11 (November 10, 1993). As a result of our conclusion that the board properly affirmed the decision of the commissioner that Allen's treatments were not medically reasonable or necessary, we need not address the issue of whether Allen should have been authorized retroactively.

Dr. Allen [was] not reasonable and necessary."[4] The commissioner subsequently denied the plaintiff's motion to correct findings.

On July 1, 2005, the plaintiff appealed to the board, claiming that the commissioner improperly had denied authorization and payment for treatment with Allen. On February 21, 2007, the board affirmed the decision of the commissioner. The board observed that it was the plaintiff's "obligation to prove to the trial commissioner [that] his treatment was reasonable and necessary as outlined in General Statutes § 31-294d . . . ." The board then stated that "[t]he specific issue that the trial commissioner needed to determine in this case was whether the treatment provided by Dr. Allen constituted remedial care for the [plaintiff's] compensable injury." Deferring to the commissioner's factual findings, which were supported by competent medical evidence, the board concluded that the decision did not constitute an abuse of the commissioner's discretion. This appeal followed.

On appeal, the plaintiff appears to claim that the commissioner improperly found that Allen's treatments were not medically reasonable and necessary.[5] The

[4] In its written decision, the board noted that although "Allen was capable of being authorized as a treating doctor, he was not the [plaintiff's] original treating doctor and pursuant to General Statutes § 31-294d (c) . . . the [plaintiff] needed to obtain the commissioner's authorization to proceed in this fashion . . . ." The board then observed that "[s]ubsequent changes of physicians must be authorized by the trier pursuant to § 31-294d (c), who has considerable discretion to grant or deny such changes." (Internal quotation marks omitted.)

[5] We note that the plaintiff acted pro se during the proceedings before the commissioner, the board and this court. "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party." (Internal quotation marks omitted.) *New Haven v. Bonner*, 272 Conn. 489, 497–98, 863 A.2d 680 (2005); *Sellers v. Sellers Garage, Inc.*, 80 Conn. App. 15, 19 n.2, 832 A.2d 679, cert. denied, 267 Conn. 904, 838 A.2d 210 (2003).

In his statement of the issues, the plaintiff has set forth five issues for our consideration. After thoroughly reviewing the entire record before us,

defendants counter that the plaintiff impermissibly is attempting to retry the factual basis of the case and have us substitute our judgment for that of the commissioner with respect to the conflicting medical evidence. We agree with the defendants.

General Statutes § 31-294d (a) (1) provides in relevant part: "The employer, as soon as the employer has knowledge of an injury, shall provide a competent physician or surgeon to attend the injured employee and, in addition, *shall furnish any medical and surgical aid or hospital and nursing service, including medical rehabilitation services and prescription drugs, as the physician or surgeon deems reasonable or necessary. . . .*" (Emphasis added.) In order for the plaintiff to prevail on appeal, he must establish that Allen's treatments were reasonable and necessary. See, e.g., *Tracy* v. *Scherwitzky Gutter Co.*, 279 Conn. 265, 274, 901 A.2d 1176 (2006). The issue is whether the commissioner properly found that Allen's chiropractic treatment was not medically reasonable or necessary.

As a preliminary matter, we set forth our standard of review. "The commissioner is the sole trier of fact and [t]he conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . The review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is [obligated] to hear the appeal on the record and not retry the facts. . . . On appeal, the board must determine whether there is any evidence in the record to support the commissioner's finding and award. . . . Our scope of review of [the] actions of the

we conclude that the actual issue presented is whether the commissioner properly found that Allen's treatments were not reasonable and medically necessary. Accordingly, we focus our discussion on that sole issue.

[board] is [similarly] . . . limited. . . . [However] [t]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed. . . . Put another way, the board is precluded from substituting its judgment for that of the commissioner with respect to factual determinations." (Citations omitted; internal quotation marks omitted.) *Brown* v. *Dept. of Correction*, 89 Conn. App. 47, 53, 871 A.2d 1094, cert. denied, 274 Conn. 914, 879 A.2d 892 (2005); see also *Marandino* v. *Prometheus Pharmacy*, 105 Conn. App. 669, 677, 939 A.2d 591, cert. granted on other grounds, 286 Conn. 916, 917, 945 A.2d 977 (2008); *Gallagher* v. *Dudley*, No. 5067, CRB-4-06-3 (March 20, 2007) (whether treatment curative and thus compensable is factual question); *Covert* v. *Patterson*, No. 4094, CRB-03-99-08 (September 29, 2000) (determination of whether medical care reasonable and necessary, including whether medical care is palliative or curative remedy, is factual issue to be determined by commissioner).

The following additional facts are necessary for our discussion. In his December 16, 2003 independent medical evaluation, Margolis opined that the plaintiff had reached maximum medical improvement. He also indicated that any further treatment would be palliative and rated the plaintiff as having a 15 percent permanent partial limitation of the lumbar spine, due to his work-related fall.

Approximately eight months later, Margolis conducted a second examination of the plaintiff. In his August 3, 2004 evaluation, Margolis noted that the plaintiff had reported that "his symptomatology is markedly improved since he initiated treatment with Dr. Allen in January of 2004, this treatment consisting of chiropractic manipulation of the entire back from neck to coccyx (according to the patient) three times a week. . . . Both the chiropractor and the [plaintiff] state that he is appreciably better, and that he can climb stairs without

support, now walk [farther], and is more comfortable . . . ." Margolis further stated that the plaintiff's functional status appeared improved since the prior examination and that the plaintiff had reported a diminishment of pain.

Margolis then set forth his opinion regarding the chiropractic treatments that the plaintiff had been receiving, as well as their effect on his physical condition. "First of all the question of [the] chiropractor: My personal belief is that chiropractic treatment of this type [mainly the manual 'release', 'fixations' and the 'reduction' of 'subluxations'] has no scientific validity . . . . *The appreciable improvement* in the man's subject of symptomatology and indeed in his object of physical examination after seven months of such treatment *can be explained on multiple other grounds including psychological encouragement, placebo effect, the spontaneous improvement in musculoskeletal function incurred by increased activity* (in other words no one knows which is the cart and which is the horse; is the man more mobile because he is convinced that he can do more or because the treatment has allowed him to do more: No one knows)." (Emphasis added.)

Margolis then observed that the plaintiff seemed capable of light work at least on a part-time basis. He recommended, as a future course of treatment, strict limitation of caloric intake and daily light exercise. He then concluded: "I do not believe as stated above that, despite the impressive functional improvement there is any orthopedic indications on a scientific basis for either initial or continued chiropractic manipulations of the spinal column."

On appeal, the plaintiff argues that the chiropractic treatments were reasonable and necessary. He further maintains that Margolis noted improvements from the first examination, in December, 2003, and the second,

in August, 2004. In essence, the plaintiff claims that during this time period, he received treatment with Allen and that his physical condition improved; a fortiori, the chiropractic treatments were medically reasonable and necessary and payment to Allen should have been authorized.

The fatal flaw in the plaintiff's argument is that Margolis, aside from his personal belief regarding this type of chiropractic treatment, offered alternate medical reasons for the plaintiff's improvement, which the commissioner was free to credit. Specifically, Margolis opined that the plaintiff's improvement could be explained on multiple other grounds, including psychological encouragement, placebo effect and spontaneous improvement in the musculoskeletal function incurred by increased activity. "[T]he power and duty to determine the facts rests on the commissioner, who is the trier of fact. . . . This authority to find the facts entitles the commissioner to determine the weight of the evidence presented and the credibility of the testimony offered by lay and expert witnesses." (Internal quotation marks omitted.) *Donaldson* v. *Continuum of Care, Inc.*, 94 Conn. App. 334, 339, 892 A.2d 332 (2006), cert. denied, 282 Conn. 921, 925 A.2d 1103 (2007). Additionally, we have stated: "Where the subordinate facts allow for diverse inferences, the commissioner's selection of the inference to be drawn must stand unless it is based on an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Once the commissioner makes a factual finding, [we are] bound by that finding if there is evidence in the record to support it. . . . Our Supreme Court consistently has held that [n]o reviewing court can . . . set aside [an inference of the commissioner] because the opposite [inference] is thought to be more reasonable; nor can the opposite inference be substituted by the court because of a belief that the

one chosen by the [commissioner] is factually questionable. . . . *This standard clearly applies to conflicting expert medical testimony. It [is] the province of the commissioner to accept the evidence which impress[es] him as being most credible and more weighty.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Krol* v. *A. V. Tuchy, Inc.*, 90 Conn. App. 346, 349, 876 A.2d 597 (2005).

The commissioner found, on the basis of Margolis' August 3, 2004 report, that Allen's treatments were not reasonable and necessary. The board properly concluded that this finding was supported by sufficient evidence in the record. Restricted by our deferential standard of review, we also decline to disturb the commissioner's finding in the absence of a showing that it was unreasonable or illegally drawn from the underlying facts. See *Sellers* v. *Sellers Garage, Inc.*, 92 Conn. App. 650, 651–52, 887 A.2d 382 (2005); see also *Donaldson* v. *Continuum of Care, Inc.*, supra, 94 Conn. App. 342–43 (board properly concluded findings should not be disturbed unless they were made without evidence, based on impermissible or unreasonable factual inferences or contrary to law).

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.