******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

HEYWARD SELLERS *v.* SELLERS
GARAGE, INC., ET AL.
(AC 35848)

Lavine, Beach and Pellegrino, Js.

*Argued November 12, 2014—officially released March 10, 2015*

(Appeal from the Workers' Compensation Review
Board.)

*Heyward Sellers*, self-represented, the appellant
(plaintiff).

*Richard T. Stabnick*, for the appellees (defendants).

*Opinion*

PELLEGRINO, J. The plaintiff, Heyward Sellers, appeals from the decision of the Workers' Compensation Review Board (board) affirming the decision of the Workers' Compensation Commissioner for the Fourth District (commissioner) dismissing in part his claim for certain workers' compensation benefits. On appeal, the plaintiff claims that the board improperly affirmed the commissioner's finding that certain medical treatments were not reasonable and necessary, and that treatment with certain medical professionals was not authorized. We affirm the decision of the board.

The following facts, as determined by the commissioner, are relevant for purposes of this appeal. On March 21, 1997, the plaintiff sustained a compensable injury when he was struck in the head by a transmission frame while employed by the defendant Sellers Garage, Inc.[1] The plaintiff was diagnosed with central pain syndrome, myofascial pain syndrome, and tension headaches. He was awarded a 10 percent permanent partial disability to the cervical spine with a date of maximum medical improvement of December 11, 1997. The Workers' Compensation Commission approved a voluntary agreement on September 14, 1998.

On February 18, 2002, James O. Donaldson, a neurologist, performed a neurological medical examination of the plaintiff for the defendant, and stated that the plaintiff sustained a minor scalp contusion due to the March 21, 1997 incident.[2] Donaldson further stated that the plaintiff did not lose consciousness, have a cerebral concussion, develop a postconcussion syndrome or develop a traumatic brain injury, but could have some headaches and neck and shoulder pain.

On October 27, 2010, William H. Druckemiller, a neurosurgeon, performed a commissioner's examination of the plaintiff. According to Druckemiller's report, the plaintiff's continued complaints of pain were significantly more than would have been expected from the findings. The report further indicated that there was no evidence of a brain injury, and that the plaintiff had degenerative changes typical for age. Druckemiller reported that the plaintiff most likely had a chronic cervical strain and had reached the point of maximum medical improvement with a 2 percent permanent partial disability rating. The report noted that no treatment would benefit the plaintiff, and that he should refrain from overhead work and continuous use of the neck.

On September 20, 2011, Jerrold Kaplan, a physician, performed a commissioner's examination of the plaintiff. Kaplan had previously performed a commissioner's examination of the plaintiff on May 9, 2000. In his 2011 report, Kaplan noted that the plaintiff had ongoing memory problems, so his recall of his medical problems was somewhat confused. Kaplan noted that the plaintiff was

complaining of cognitive impairments and neck pain with headaches back in 2000 related to the 1997 injury. Kaplan concluded, therefore, that treatment for those conditions should be considered causally related to the 1997 injury, but that treatment for the bilateral upper extremities, including pain management related to those conditions, was not causally related to the 1997 injury.

In his 2011 report, Kaplan noted that the neuropsychological testing he recommended in 2000 was never done, and he again recommended that it be done to differentiate between cognitive impairment related to possible depression or from side effects related to the plaintiff's medication. Kaplan also recommended that an electromyogram and a nerve conduction study be performed to differentiate the degree of cervical radiculopathy versus peripheral neuropathy. Kaplan stated that additional recommendations would follow this testing. He also noted that the medications that the plaintiff was taking may be adding to his cognitive impairment, as many of the medications have cognitive side effects.

In his deposition on May 6, 2011, Steven Levin, the plaintiff's treating physician and pain management doctor, stated that he had been treating the plaintiff with medications, and that the plaintiff had a light sedentary work capacity. Levin further testified that based on the plaintiff's subjective complaints, he continued to treat the plaintiff with medications, and that they assist the plaintiff in the activities of daily living, but do not help him to continue working.

Following a formal hearing in which the plaintiff sought reimbursement for treatment and expenses from June 30, 2006, to the present, the commissioner credited Kaplan's testimony that the treatment for the cognitive impairments, headaches, and neck pain suffered by the plaintiff was related to the March 21, 1997 compensable incident. The commissioner ordered the defendant to provide neuropsychological testing, an electromyogram, and a nerve conduction study as recommended by Kaplan, with the results to be forwarded to Kaplan for further comment in a supplement to his commissioner's examination report. The commissioner found Levin to be persuasive in his testimony that continued medications assist the plaintiff in his activities of daily life, but do not help him to continue working. He further found the medications prescribed by Levin to be palliative rather than curative, and not reasonable and necessary medical treatment after May 6, 2011, the date of Levin's deposition. Finally, the commissioner concluded that Levin was the plaintiff's sole authorized treating physician, and that all medical treatment provided by other physicians was outside the chain of referral and not subject to compensation by the defendant. The plaintiff appealed to the board, which affirmed the commissioner's finding and orders, concluding that the findings

were all supported by the evidence in the record. This appeal followed.

I

On appeal, the plaintiff first claims that the board erred in affirming the finding of the commissioner that the medications prescribed by Levin were palliative rather than curative and, therefore, not reasonable and necessary medical treatment. We disagree with the plaintiff.

General Statutes § 31-294d (a) (1) provides in relevant part: "The employer, as soon as the employer has knowledge of an injury, shall provide a competent physician or surgeon to attend the injured employee and, in addition, shall furnish any medical and surgical aid or hospital and nursing service, including medical rehabilitation services and prescription drugs, *as the physician or surgeon deems reasonable or necessary. . . .*" (Emphasis added.) The issue is whether the commissioner properly found that the treatment prescribed by Levin was not reasonable and necessary after May 6, 2011.[3]

"As a preliminary matter, we set forth our standard of review. The commissioner is the sole trier of fact and [t]he conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . The review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is [obligated] to hear the appeal on the record and not retry the facts. . . . On appeal, the board must determine whether there is any evidence in the record to support the commissioner's finding and award. . . . Our scope of review of [the] actions of the [board] is [similarly] . . . limited. . . . [However] [t]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed. . . . Put another way, the board is precluded from substituting its judgment for that of the commissioner with respect to factual determinations." (Internal quotation marks omitted.) *Anderson* v. *R & K Spero Co.*, 107 Conn. App. 608, 613–14, 946 A.2d 273 (2008). The determination regarding whether treatment is reasonable and necessary, including whether the treatment is curative or palliative, is a question of fact to be resolved by the commissioner. Id., 614, citing *Covert* v. *Patterson*, No. 4094, CRB-03-99-08 (September 29, 2000).

According to the plaintiff, the board erred in affirming the finding of the commissioner that the treatment prescribed by Levin was not reasonable and necessary. As part of this claim, the plaintiff argues that the commissioner improperly found that Levin's treatment was palliative rather than curative and, therefore, not

reasonable and necessary, based solely on the fact that it did not assist the plaintiff to continue working.[4] We disagree and conclude that the commissioner properly found, on the basis of all of the evidence in the record, that the treatment prescribed by Levin was not reasonable and necessary.

In his deposition, Levin testified that the plaintiff had reached maximum medical improvement in March, 2002, but that he continued to see the plaintiff for pain management. In 2010, Druckemiller indicated that the plaintiff showed no signs of a brain injury but, rather, had degenerative changes typical for his age. Druckemiller indicated that the plaintiff most likely had a chronic cervical strain and had reached the point of maximum medical improvement, adding that no treatment would benefit the plaintiff. Finally, Kaplan's report specifically called for additional neuropsychological testing, an electromyogram, and a nerve conduction study of the plaintiff. Kaplan did not discount the possibility of further treatment. On the contrary, Kaplan's report indicated that additional treatment recommendations might be forthcoming following this additional testing. Kaplan also expressed concern that the medications being utilized by Levin to treat the plaintiff's pain might be adding to his cognitive impairment.[5]

On the basis of all of the evidence in the record, and with the expectation that the plaintiff would undergo additional testing, the commissioner found that Levin's treatments were not reasonable and necessary. The commissioner specifically stated that after the additional testing was complete, "[t]he results shall be forwarded to Dr. Kaplan for further comment in a supplement to his Commissioners' Examination report. Should Dr. Kaplan recommend additional treatment after the testing, such treatment shall be considered reasonable and necessary but shall be subject to the [defendants'] due process rights." "[I]t is the exclusive function of the finder of fact to reject or accept evidence and to believe or to disbelieve any expert testimony. The trier may accept or reject, in whole or in part, the testimony of an expert witness." *Cervero* v. *Morey's Assn., Inc.*, 122 Conn. App. 82, 90, 996 A.2d 1247, cert. denied, 298 Conn. 908, 3 A.3d 68 (2010). Restricted by our deferential standard of review, we conclude that the facts are consistent with the commissioner's finding and that the board properly affirmed this finding.

## II

The plaintiff also claims that the commissioner improperly found that the medical treatment by physicians James K. Sabshin and Mark Kraus was outside the chain of authorization. We disagree.

The following additional facts are necessary for the resolution of this claim. Following the formal hearing at which both parties submitted exhibits, the commis-

sioner found that Levin was the sole authorized treating physician. The commissioner indicated that any treatment by physicians other than Levin, including Kraus and Sabshin, was outside the chain of authorization and, therefore, was not subject to compensation by the defendant. On appeal, the plaintiff challenges this determination.

General Statutes § 31-294d (c) provides that "[t]he commissioner may, without hearing, at the request of the employer or the injured employee, when good reason exists, or on his own motion, authorize or direct a change of physician or surgeon or hospital or nursing service provided pursuant to subsection (a) of this section." "A claimant should obtain permission to change physicians before commencing a new course of treatment. This may include a valid referral from an authorized physician." (Internal quotation marks omitted.) *Sellers* v. *Sellers Garage, Inc.*, 80 Conn. App. 15, 22, 832 A.2d 679, cert. denied, 267 Conn. 904, 838 A.2d 210 (2003). In the present case, the evidence in the record indicated that Levin was the plaintiff's treating physician, and the plaintiff presented no evidence indicating that the commissioner authorized or directed a change in physician from Levin to Kraus or Sabshin. The board, therefore, properly affirmed the dismissal of all medical treatment by Sabshin and Kraus as outside the chain of authorization.[6]

The decision of the Workers' Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] Traveler's Insurance Company, the workers' compensation insurer for Sellers Garage, Inc., is also a defendant in this case. For convenience, we refer in this opinion to Sellers Garage, Inc., as the defendant.

[2] The commissioner indicated that this examination took place on March 4, 2002. Donaldson's report, dated March 4, 2002, stated that the examination took place on February 18, 2002.

[3] Pursuant to § 31-294d (a) (1), the employer is responsible for providing reasonable or necessary medical care. In the present case, the commissioner found the medications prescribed by Levin "to be palliative and not curative and do not constitute reasonable and necessary medical treatment after May 6, 2011." On the basis of our review of the record, we conclude that the evidence is sufficient to support the decision of the commissioner under either standard.

[4] "Reasonable or necessary medical care is that which is curative or remedial. Curative or remedial care is that which seeks to repair the damage to health caused by the job even if not enough health is restored to enable the employee to return to work. Any therapy designed to keep the employee at work or to return him to work is curative. Similarly, any therapy designed to eliminate pain so that the employee can work is curative. Finally, any therapy which is life prolonging is curative." *Bowen* v. *Stanadyne, Inc.*, No. 232, CRD-1-83 (June 19, 1984).

[5] Kaplan's report states in part: "I am concerned that the medications being utilized by Dr. Levin to treat [the plaintiff's] pain may be adding to his cognitive impairment. Many of these medications have cognitive side effects. I would recommend attempting to cut back on some of these medications to determine whether or not [the plaintiff's] cognitive condition improves."

[6] To the extent the plaintiff contends that the commissioner should have considered Sabshin's report in determining whether the plaintiff's treatment was reasonable and necessary, we again note that "[i]t is the exclusive function of the finder of fact to reject or accept evidence and to believe or disbelieve any expert testimony." *Cervero* v. *Morey's Assn., Inc.*, supra, 122

Conn. App. 90. On the basis of our review of the record, we conclude that the board properly affirmed the finding of the commissioner as supported by the evidence in the record.